United States District Court
Southern District of Texas
FILED

NOV 1 0 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY | § § § | |
| VS. | § § | CIVIL ACTION NO. B-02-205 JUDGE ANDREW S. HANEN (JURY) |
| AMERICAN STANDARD, INC. | § § | |

## AMERICAN STANDARD INC.'S PROPOSED JURY CHARGE

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence. You will need to rely on your memories.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits may be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should

---

attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

**PROPOSED JURY CHARGE – Page 2**

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

A corporation acts through its agents and employees, and the acts of an agent and employee are imputed to the corporation unless those acts are outside the scope of that agent or employee's duties.[1]

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or

---

[1] *See In re Hellenic Inc.*, 252 F.3d 391, 395-96 (5th Cir. 2001); *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1376 (5th Cir.1983) (en banc)

**PROPOSED JURY CHARGE – Page 3**

simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

**PROPOSED JURY CHARGE – Page 4**

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole— that is, to compensate the plaintiff for the damage that the plaintiff has suffered.

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

Any damage to the plaintiff's personal property. You may award as damages an amount equal to the cost of restoring the property to its condition prior to the failure of the ballcock assembly [toilet]. You also may take into consideration any loss the plaintiff sustained by being deprived of the use of the property during the period required for its repair.

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

**PROPOSED JURY CHARGE – Page 5**

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

# QUESTION NO. 1

Did the negligence, if any, of the persons named below proximately cause the occurrence in question?

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the even, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

a.      Valley Diagnostic Clinic, P.A.                     _____

## QUESTION NO. 2

Was there a design defect in the ballcock assembly at the time it left the possession of American Standard Inc. that was a producing cause of the occurrence in question?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist, there must have been a safer alternative design.

If you find the product to be defective, that defect must render the product unreasonably dangerous. A product is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product.[2]

A product is not in a defective condition, thus not unreasonably dangerous, if the unreasonably dangerous condition is solely caused by a substantial change or alteration of the product after it is sold. "Substantial change or alteration" means that the configuration or operation characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant would not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration.

Safer alternative design means a product design other than the one actually used that in reasonable probability –

(1) would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and

(2) was economically and technologically feasible at the time the product left the control of American Standard Inc. by the application of existing or reasonably achievable scientific knowledge.

A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product.[3]

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produces the occurrence. In other words, defendant's conduct must be a substantial factor in bringing about the injury and the injury would not

---

[2] *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).

[3] *Acord v. General Motors Corp.*, 669 S.W.2d 111, 113(Tex. 1984); *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).

**PROPOSED JURY CHARGE – Page 8**

have occurred but for the defendant's conduct.[4]   There may be more than one cause of an occurrence.  But if an act or omission of anyone who is not a party to the suit was the "sole cause" of the occurrence, then the act, omission, or product of any party could not have been a cause of the occurrence.

Answer "Yes" or "No."

Answer: _____

Authority – Tex. PJC 71.4B (Question – MFR defect); 70.1 (producing cause); 70.3 (sole cause) – Strict Liability Design Defect

---

[4] *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 238 (5th Cir. 2003) (quoting *GMC v. Harper*, 61 S.W.3d 118, 131 (Tex.App.—Eastland 2001, pet. filed)).

## QUESTION NO. 3

Did the negligence, if any, of American Standard result in a design defect of the ballcock assembly at the time it left the possession of American Standard Inc. that was a proximate cause of the occurrence in question?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist, there must have been a safer alternative design.

If you find the product to be defective, that defect must render the product unreasonably dangerous. A product is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product.[5]

A product is not in a defective condition, thus not unreasonably dangerous, if the unreasonably dangerous condition is solely caused by a substantial change or alteration of the product after it is sold. "Substantial change or alteration" means that the configuration or operation characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant would not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration.

Safer alternative design means a product design other than the one actually used that in reasonable probability –

(1) would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and

(2) was economically and technologically feasible at the time the product left the control of American Standard Inc. by the application of existing or reasonably achievable scientific knowledge.

A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product.[6]

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have

---

[5] *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).

[6] *Acord v. General Motors Corp.*, 669 S.W.2d 111, 113(Tex. 1984); *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).

occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the even, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.  But if an act or omission of anyone who is not a party to the suit was the "sole cause" of the occurrence, then the act, omission, or product of any party could not have been a cause of the occurrence.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

Answer: _____

Authority – Tex. PJC 71.4B (Question – MFR defect); 70.1 (producing cause); 70.3 (sole cause)
Negligent design defect – modified instructions

**PROPOSED JURY CHARGE – Page 11**

## QUESTION NO. 4

Was there a defect in the marketing of the ballcock assembly at the time it left the possession of American Standard Inc. that was a producing cause of the occurrence in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use, and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

A warning is not required where the manufacturer or supplier furnishes a product to a sophisticated user who is experienced in the use of the product and who is thoroughly aware of the risks associated with its use and the protective measures required to avoid those risks.[7]  Whether a warning is required, and whether a particular warning is adequate, must be evaluated in connection with the knowledge and expertise of those who may be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain.[8]

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produces the occurrence.  There may be more than one cause of an occurrence.  But if an act or omission of anyone who is not a party to the suit was the "sole cause" of the occurrence, then the act, omission, or product of any party could not have been a cause of the occurrence.

---

[7]  *Humble Sand & Gravel, Inc. v. Gomez*, 48 S.W.2d 487 (Tex.App.—Texarkana 2001, pet. granted).

[8]  *Argubright v. Beech Aircraft Corp.*, 868 F.2d 764, 766 (5th Cir. 1989) *cert. denied*, 493 U.S. 934.

A failure to give an inadequate warning is not a producing cause of the occurrence if there is evidence that the warning would not have been read or would not have been followed.[9]

Answer "Yes" or "No."

Answer: _____

Authority:  PJC 71.5 (question – mktg defect – strict liability); 70.1 (producing cause); 70.3 (sole cause)

---

[9]  *GMC v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).

**PROPOSED JURY CHARGE – Page 13**

## QUESTION NO. 5

Did the negligence of American Standard Inc., if any cause a defect in the marketing of the ballcock assembly at the time it left the possession of American Standard Inc. that was a proximate cause of the occurrence in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use, and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

A warning is not required where the manufacturer or supplier furnishes a product to a sophisticated user who is experienced in the use of the product and who is thoroughly aware of the risks associated with its use and the protective measures required to avoid those risks.[10] Whether a warning is required, and whether a particular warning is adequate, must be evaluated in connection with the knowledge and expertise of those who may be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain.[11]

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the even, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

---

[10]   *Humble Sand & Gravel, Inc. v. Gomez*, 48 S.W.2d 487 (Tex.App.—Texarkana 2001, pet. granted).
[11]   *Argubright v. Beech Aircraft Corp.*, 868 F.2d 764, 766 (5th Cir. 1989) *cert. denied*, 493 U.S. 934.

A failure to give an inadequate warning is not a proximate cause of the occurrence if there is evidence that the warning would not have been read or would not have been followed.[12]

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

Answer: _____

Authority:  PJC 71.5 (question – mktg defect, negligent); 70.1 (producing cause); 70.3 (sole cause); 70.5

---

[12]  *GMC v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).

If in answers to Questions 1 and 2, 3, 4, or 5, you have found that more than one of the parties' acts, omissions, or products caused the occurrence in question, then answer the following question. Otherwise, do not answer the following question.

The percentages you find must total 100 percent. The percentage of causation attributable to an entity or product is not necessarily measured by the number of acts, omissions, or product defects found.

## QUESTION 6

For each entity or product found by you to have caused the occurrence, find the percentage caused by –

a.   Valley Diagnostic Clinic, P.A.                    _____%

b.   American Standard Inc.                           _____%

        Total                                    ___100___%

Answer Question No. 7 if you answered "Yes" to Question No. 2, 3, 4 or 5 and answered:

(1)  "No" for Valley Diagnostic Clinic, P.A. to Question 1, or
(2)  50 percent or less for Valley Diagnostic Clinic to Question 6.

Otherwise, do not answer Question 7.

## QUESTION NO. 7

What sum of money, if paid now in case, would fairly and reasonably compensate Transcontinental Insurance Company for its damages, if any, for the reasonable and necessary amount it paid to Valley Diagnostic Clinic, P.A. for the loss resulting from the occurrence in question?

Do not reduce the amount, if any, in your answer because of the negligence, if any, of Valley Diagnostic Clinic, P.A.

Answer in dollars and cents for damages, if any.

Answer: _____

Authority – PJC 83.1; 83.3

**PROPOSED JURY CHARGE – Page 17**

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1.    to preside during your deliberations;

2.    to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3.    to write out and hand to the bailiff any communication concerning the case which you desire to have delivered to the judge;

4.    to vote on the questions;

5.    to write your answers to the questions in the spaces provided; and

6.    to certify to your verdict in the space provided for the presiding juror's signature.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of this court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the foregoing questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____

**JUDGE PRESIDING**

**PROPOSED JURY CHARGE – Page 18**

## CERTIFICATE

We, the Jury, have answered the above and foregoing Questions as herein indicated, and herewith return same into Court as our Verdict.

(Presiding Juror sign here ONLY if your verdict is unanimous.)

_____

**PRESIDING JUROR**

If verdict is not unanimous, all jurors rendering the Verdict sign below:

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

Presiding Juror print name for
identification

**PROPOSED JURY CHARGE – Page 19**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY | § § § | |
| VS. | § § § | CIVIL ACTION NO. B-02-205<br>JUDGE ANDREW S. HANEN<br>(JURY) |
| AMERICAN STANDARD, INC. | § | |

## AMERICAN STANDARD INC.'S PROPOSED JURY CHARGE

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence. You will need to rely on your memories.

Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits may be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should

---

PROPOSED JURY CHARGE – Page 1

attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

**PROPOSED JURY CHARGE – Page 2**

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

You have heard the closing arguments of the attorneys. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

A corporation acts through its agents and employees, and the acts of an agent and employee are imputed to the corporation unless those acts are outside the scope of that agent or employee's duties.[1]

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or

---

[1] *See In re Hellenic Inc.*, 252 F.3d 391, 395-96 (5th Cir. 2001); *Continental Oil Co. v. Bonanza Corp.*, 706 F.2d 1365, 1376 (5th Cir.1983) (en banc).

**PROPOSED JURY CHARGE – Page 3**

simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

**PROPOSED JURY CHARGE – Page 4**

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. You may now retire to the jury room to conduct your deliberations.

If the plaintiff has proven his claim against the defendant by a preponderance of the evidence, you must determine the damages to which the plaintiff is entitled. You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case. It is your task first to decide whether the defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendant is liable and that the plaintiff is entitled to recover money from the defendant.

If you find that the defendant is liable to the plaintiff, then you must determine an amount that is fair compensation for all of the plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the plaintiff whole— that is, to compensate the plaintiff for the damage that the plaintiff has suffered.

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's allegedly wrongful conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

Any damage to the plaintiff's personal property. You may award as damages an amount equal to the cost of restoring the property to its condition prior to the failure of the ballcock assembly [toilet]. You also may take into consideration any loss the plaintiff sustained by being deprived of the use of the property during the period required for its repair.

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find the defendant is liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort. If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

PROPOSED JURY CHARGE – Page 5

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages. An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages. However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages. The defendant has the burden of proving the damages which the plaintiff could have mitigated. In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

**PROPOSED JURY CHARGE – Page 6**

## QUESTION NO. 1

Did the negligence, if any, of the persons named below proximately cause the occurrence in question?

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the even, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

a.   Valley Diagnostic Clinic, P.A.                    _____

*PROPOSED JURY CHARGE – Page 7*

## QUESTION NO. 2

Was there a design defect in the ballcock assembly at the time it left the possession of American Standard Inc. that was a producing cause of the occurrence in question?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist, there must have been a safer alternative design.

If you find the product to be defective, that defect must render the product unreasonably dangerous. A product is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product.[2]

A product is not in a defective condition, thus not unreasonably dangerous, if the unreasonably dangerous condition is solely caused by a substantial change or alteration of the product after it is sold. "Substantial change or alteration" means that the configuration or operation characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant would not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration.

Safer alternative design means a product design other than the one actually used that in reasonable probability –

(1) would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and
(2) was economically and technologically feasible at the time the product left the control of American Standard Inc. by the application of existing or reasonably achievable scientific knowledge.

A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product.[3]

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produces the occurrence. In other words, defendant's conduct must be a substantial factor in bringing about the injury and the injury would not

---

[2] *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).
[3] *Acord v. General Motors Corp.*, 669 S.W.2d 111, 113(Tex. 1984); *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).

have occurred but for the defendant's conduct.[4]  There may be more than one cause of an occurrence.  But if an act or omission of anyone who is not a party to the suit was the "sole cause" of the occurrence, then the act, omission, or product of any party could not have been a cause of the occurrence.

Answer "Yes" or "No."

Answer: _____

Authority – Tex. PJC 71.4B (Question – MFR defect); 70.1 (producing cause); 70.3 (sole cause) – Strict Liability Design Defect

---

[4] *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 238 (5th Cir. 2003) (quoting *GMC v. Harper*, 61 S.W.3d 118, 131 (Tex.App.—Eastland 2001, pet. filed)).

## QUESTION NO. 3

Did the negligence, if any, of American Standard result in a design defect of the ballcock assembly at the time it left the possession of American Standard Inc. that was a proximate cause of the occurrence in question?

A "design defect" is a condition of the product that renders it unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. For a design defect to exist, there must have been a safer alternative design.

If you find the product to be defective, that defect must render the product unreasonably dangerous. A product is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product.[5]

A product is not in a defective condition, thus not unreasonably dangerous, if the unreasonably dangerous condition is solely caused by a substantial change or alteration of the product after it is sold. "Substantial change or alteration" means that the configuration or operation characteristics of the product are changed or altered by affirmative conduct of some person in a manner that the defendant would not have reasonably foreseen would occur in the intended or foreseeable use of the product. Substantial change or alteration does not include reasonably foreseeable wear and tear or deterioration.

Safer alternative design means a product design other than the one actually used that in reasonable probability –

(1) would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and

(2) was economically and technologically feasible at the time the product left the control of American Standard Inc. by the application of existing or reasonably achievable scientific knowledge.

A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product.[6]

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have

---

[5] *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).
[6] *Acord v. General Motors Corp.*, 669 S.W.2d 111, 113(Tex. 1984); *Syrie v. Knoll International*, 748 F.2d 304, 306-07 (5th Cir. 1984).

**PROPOSED JURY CHARGE – Page 10**

occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the even, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.  But if an act or omission of anyone who is not a party to the suit was the "sole cause" of the occurrence, then the act, omission, or product of any party could not have been a cause of the occurrence.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

Answer: _____

Authority – Tex. PJC 71.4B (Question – MFR defect); 70.1 (producing cause); 70.3 (sole cause)
Negligent design defect – modified instructions

## QUESTION NO. 4

Was there a defect in the marketing of the ballcock assembly at the time it left the possession of American Standard Inc. that was a producing cause of the occurrence in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use, and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

A warning is not required where the manufacturer or supplier furnishes a product to a sophisticated user who is experienced in the use of the product and who is thoroughly aware of the risks associated with its use and the protective measures required to avoid those risks.[7]  Whether a warning is required, and whether a particular warning is adequate, must be evaluated in connection with the knowledge and expertise of those who may be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain.[8]

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produces the occurrence.  There may be more than one cause of an occurrence.  But if an act or omission of anyone who is not a party to the suit was the "sole cause" of the occurrence, then the act, omission, or product of any party could not have been a cause of the occurrence.

---

[7] *Humble Sand & Gravel, Inc. v. Gomez*, 48 S.W.2d 487 (Tex.App.—Texarkana 2001, pet. granted).

[8] *Argubright v. Beech Aircraft Corp.*, 868 F.2d 764, 766 (5th Cir. 1989) *cert. denied*, 493 U.S. 934.

A failure to give an inadequate warning is not a producing cause of the occurrence if there is evidence that the warning would not have been read or would not have been followed.[9]

Answer "Yes" or "No."

Answer: _____

Authority:   PJC 71.5 (question – mktg defect – strict liability); 70.1 (producing cause); 70.3 (sole cause)

---

[9]   *GMC v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).

## QUESTION NO. 5

Did the negligence of American Standard Inc., if any cause a defect in the marketing of the ballcock assembly at the time it left the possession of American Standard Inc. that was a proximate cause of the occurrence in question?

A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions mean warnings and instructions given in a form that could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use, and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

A warning is not required where the manufacturer or supplier furnishes a product to a sophisticated user who is experienced in the use of the product and who is thoroughly aware of the risks associated with its use and the protective measures required to avoid those risks.[10]  Whether a warning is required, and whether a particular warning is adequate, must be evaluated in connection with the knowledge and expertise of those who may be expected to use or otherwise come in contact with the product as it proceeds along its intended marketing chain.[11]

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the even, or some similar event, might reasonably result therefrom.  There may be more than one proximate cause of an event.

---

[10]  *Humble Sand & Gravel, Inc. v. Gomez*, 48 S.W.2d 487 (Tex.App.—Texarkana 2001, pet. granted).

[11]  *Argubright v. Beech Aircraft Corp.*, 868 F.2d 764, 766 (5th Cir. 1989) *cert. denied*, 493 U.S. 934.

A failure to give an inadequate warning is not a proximate cause of the occurrence if there is evidence that the warning would not have been read or would not have been followed.[12]

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

Answer "Yes" or "No."

Answer: _____

Authority:   PJC 71.5 (question – mktg defect, negligent); 70.1 (producing cause); 70.3 (sole cause); 70.5

---

[12]   *GMC v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 357 (Tex. 1993).

**PROPOSED JURY CHARGE – Page 15**

If in answers to Questions 1 and 2, 3, 4, or 5, you have found that more than one of the parties' acts, omissions, or products caused the occurrence in question, then answer the following question.  Otherwise, do not answer the following question.

The percentages you find must total 100 percent.  The percentage of causation attributable to an entity or product is not necessarily measured by the number of acts, omissions, or product defects found.

## QUESTION 6

For each entity or product found by you to have caused the occurrence, find the percentage caused by –

| | | | |
|---|---|---|---|
| a. | Valley Diagnostic Clinic, P.A. | _____ | % |
| b. | American Standard Inc. | _____ | % |
| | Total | ____100____ | % |

Answer Question No. 7 if you answered "Yes" to Question No. 2, 3, 4 or 5 and answered:

(1) "No" for Valley Diagnostic Clinic, P.A. to Question 1, or
(2) 50 percent or less for Valley Diagnostic Clinic to Question 6.

Otherwise, do not answer Question 7.

## QUESTION NO. 7

What sum of money, if paid now in case, would fairly and reasonably compensate Transcontinental Insurance Company for its damages, if any, for the reasonable and necessary amount it paid to Valley Diagnostic Clinic, P.A. for the loss resulting from the occurrence in question?

Do not reduce the amount, if any, in your answer because of the negligence, if any, of Valley Diagnostic Clinic, P.A.

Answer in dollars and cents for damages, if any.

Answer: _____

Authority – PJC 83.1; 83.3

**PROPOSED JURY CHARGE – Page 17**

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror:

1.      to preside during your deliberations;

2.      to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge;

3.      to write out and hand to the bailiff any communication concerning the case which you desire to have delivered to the judge;

4.      to vote on the questions;

5.      to write your answers to the questions in the spaces provided; and

6.      to certify to your verdict in the space provided for the presiding juror's signature.

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of this court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the foregoing questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____

**JUDGE PRESIDING**

*PROPOSED JURY CHARGE – Page 18*

## <u>CERTIFICATE</u>

We, the Jury, have answered the above and foregoing Questions as herein indicated, and herewith return same into Court as our Verdict.

(Presiding Juror sign here ONLY if your verdict is unanimous.)

_____

**PRESIDING JUROR**

If verdict is not unanimous, all jurors rendering the Verdict sign below:

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

Presiding Juror print name for
identification