

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY § § § § Plaintiff, § § v. § AMERICAN STANDARD, INC. § § Defendant. § | CIVIL ACTION NO. B-02-205 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING PLAINTIFF'S MARKETING DEFECT CLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff TRANSCONTINENTAL INSURANCE COMPANY ("Transcontinental" or "Plaintiff") submits the following Response to Defendant's Motion for Partial Summary Regarding Plaintiff's Marketing Defect Claim and for good cause shows:

I.

**SUMMARY OF ARGUMENT**

Defendant's motion should be denied because:

- **Defendant breached its duty to warn;**

- **The Defect in Defendant's product was foreseeable; and**

- **Said defect constituted a causative nexus in the Plaintiff's injury.**

**SUMMARY JUDGMENT PROOF**

Plaintiff submits contemporaneously with and incorporates by reference the following summary judgment proof:

- The Report of Thomas W. Eager, ScD., P.E. attached and incorporated as Exhibit A; and

- The Judicial admissions of Defendant, incorporated by reference.

## BACKGROUND

1. On March 4, 2001 a water leak was discovered at a medical clinic owned by Valley Diagnostic Clinic, P.A. ("Valley Diagnostic") located at 2200 Haine Drive, Harlingen, Harris County, Texas (the "Clinic"). The source of the leak was a second floor toilet manufactured by American Standard, Inc. ("American Standard"). Transcontinental Insurance Company ("Transcontinental") insured Valley Diagnostic.

2. Transcontinental paid Valley Diagnostic $4,135,919.61 to date as a result of the water leak. Transcontinental complains that the toilet, in particular a plastic valve inside the tank of the toilet, was defective in its design and its marketing and that the water leak occurred as a result of these defects. American Standard denies that its product was defective. American Standard asserts that the leak was caused by the actions or omissions of Valley Diagnostic or unknown third parties.

## AUTHORITIES

3. The Federal summary judgment standard is well settled. Summary judgment is only appropriate, when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). A material fact is one that "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine'... if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 456 (5th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).

    4.    To prove a marketing defect claim under Texas law, a plaintiff must show:

>(1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist;
>
>(2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed,
>
>(3) the product must possess a marketing defect;
>
>(4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and
>
>(5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.
>
>*USX Corp. v. Salinas*, 818 S.W.2d 473, 482-83 (Tex.App.--San Antonio 1991, writ denied).

## ARGUMENT

*Defendant breached its duty to warn because the defect in its product was foreseeable*

    5.    "A manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product." *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997). In this case, it is undisputed that acetal products are unsuitable for plumbing applications. *See* Defendant's Motion to Exclude or Alternatively Limit the Testimony of Plaintiff's Material Expert, Thomas W. Eagar at p. 2. Defendant frankly admits, **"[A]cetal products [are] unsuitable for use in plumbing products—a conclusion reached by DuPont, the creator of Delrin (the acetal used in this product),** *in the 1990s.*" *Id.* at p. 2 (italics in original)(emphasis added).

6. Additionally, Plaintiff's expert, Thomas W. Eagar, has stated in his report that "Acetal plastic is susceptible to degradation and environmentally assisted cracking in waters containing chlorine or other halogens at relatively low concentrations." *See Ex.* A at p. 1. Thomas also cites scientific authority that "rates acetal as susceptible to cracking, oxidation of plasticizer, softening, swelling and surface hardening when exposed to calcium hypochlorite." *Id.* Calcium hypochlorite is also commonly used as chlorine for disinfection purposes. *See* United States Environmental Protection Agency, Alternative Disinfectants and Oxidants Guidance Manual, April 1999, available at the website address: http://www.epa.gov/safewater/mdbp/alternative_disinfectants_guidance.pdf., page 68.

7. Thus, the key question for the jury is *when* did Defendant know that acetal was unsuitable in the ballcock assembly. Defendant strenuously argues that there is no evidence that it knew that acetal was unsuitable for its product until well after the date of sale. However, Mr. Eagar provides in his report that "plastics have strength and toughness ration which are 10 to 100 times lower than common metals, such as brass, used in plumbing fixtures." *Id.* at p. 1. Such information was well known to the industry at the time of manufacture. Thus, Plaintiff has produced some evidence that Defendant had enough information to know or reasonably foresee the defects in its product at the time of manufacture. Therefore, Defendant's motion should be denied.

8. The Defendant also breached its post-sale duty to warn. In Texas, a manufacturer may be negligent for breach of a post-sale duty, if it is established that the manufacturer assumed a duty and then did not use reasonable means to discharge the duty. *See Bell Helicopter Company v. Bradshaw*, 594 S.W.2d 519, 533 (Tex. App.—Corpus Christi 1979, writ ref'd n.r.e.).

In *Bell Helicopter Company*, the Corpus Christi Court of Appeals held a manufacturer liable for breach of a post-sale duty under a negligence theory. That court stated:

> This Court does not adopt the rule . . . that a manufacturer is under a continuing duty to improve his product, nor is it necessary for us to hold in this case that a manufacturer has a duty to remedy dangerous defects in a product which are not discovered until after manufacture and sale. However, where the record reflects, as in this case, an apparent assumption of such a duty by a manufacturer, it is not wholly improper for us to measure its conduct against such duty with respect to plaintiffs' allegations of post-manufacture negligence.

9. The Restatement of Torts (Third) Section 10 imposes a post-sale duty to warn on a manufacturer. The adoption of this Section is still an open question of Texas law. The Texas Supreme Court has expressly stated:

> Thus, we express no opinion whether those Restatement sections are consistent with established Texas law. *Torrington v. Stuzman*, 46 SW 3d 829, 836-37 (Tex. 2000).

10. Therefore, Plaintiff expressly asks this Court to adopt Section 10 of the Restatement of Torts (Third). Such an adoption is not inconsistent with Texas law because the Texas Supreme Court has cited the Restatement (Third) on multiple occasions. *See General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 594 (Tex. 1999) (recognizing consistency between Texas law and Section 17, under which plaintiff's conduct is relevant to whether the damages should be reduced, but noting that plaintiff is under no affirmative duty to discover defects); *Hyundai Motor co. v. Rodriguez*, 995 S.W.2d 661, 667, n.23 (Tex. 1999) (citing Section 2, cmt. n, for the proposition that the proof on a claim for defective design should be "the same for any legal theory asserted," whether strict liability, negligence, or breach of implied warranty). Moreover, in *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, (Tex. 1999), the Court compared numerous sections of Texas state law to the Restatement (Third) (including the requirement that

plaintiff show a reasonable alternative design) and found them all consistent with state law. *Id.* at 257. (noting that similar to section 82.005 of the Texas code that "the Restatement (Third)... also makes a reasonable alternative design a prerequisite to design-defect liability"). Therefore, it is not inconsistent with Texas law to find that Defendant had a post-sale but pre-event duty to warn and therefore, Defendant's motion to should be denied.

*The defective ballcock assembly constituted a causative nexus in the Plaintiff's injury*

11.    Finally, Defendant argues that Plaintiff "has no proof of causation." However, Plaintiff must merely show that the failure to warn and/or instruct must constitute **a causative nexus** in the product user's injury. *USX Corp. v. Salinas*, 818 S.W.2d 473, 482-83 (Tex.App.-- San Antonio 1991, writ denied)(emphasis added). In this case, it is undisputed that acetal in unsuitable in plumbing applications. Plumbing applications are also the intended use of a toilet. Defendant should have simply warned that its product was "susceptible to degradation and environmentally assisted cracking in waters containing chlorine or other halogens at realatively low concentrations." *See Ex. A.* at p. 1.   A reasonable jury could certainly conclude that had this warning been placed on the product, this injury could have been avoided.  Therefore, Defendant's motion should be denied.

## CONCLUSION

Defendant has judicially admitted that acetal, which is a component in its product, is not suitable for plumbing applications.  Plaintiff has shown that the marketing defect in the ballcock assembly was foreseeable and Defendant had a post-sale duty to warn its end users.  Finally, Plaintiff can show that a reasonable jury would find that there is a causative nexus between the Defendant's failure to warn and the injury suffered by the Plaintiff.  As a result, Defendant's

motion should be denied in its entirety and Plaintiff should be granted all relief to which it is justly entitled.

Respectfully submitted,

*C. Wesley Vines w/permission*

C. WESLEY VINES
Texas Bar No. 20586050
RICHARD M. MUNOZ
Texas Bar No. 24013212
**COZEN AND O'CONNOR**
2300 BankOne Center
1717 Main Street
Dallas, Texas 75201-7335
214-462-3000 - telephone
214-462-3299 - facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was served on all parties to this lawsuit, by and through their counsel of record, on the 11th day of November, 2003, addressed as follows:

*Via Federal Express and Facsimile*
James R. Old, Jr., Esq.
GERMER GERTZ, L.L.P.
550 Fannin, Suite 700
Beaumont, TX 77701

*Via Federal Express and Facsimile*
Dale M. "Rett" Holidy, Esq.
GERMER, GERTZ, L.L.P.
Three Allen Center
333 Clay, Suite 4105
Houston, TX 77002

C. Wesley Vines w/permission
_____
C. WESLEY VINES

DALLAS1\122006\1 112639.000

**THOMAS W. EAGAR, Sc.D., P.E.**
ROOM 4-136
MASSACHUSETTS INSTITUTE OF TECHNOLOGY
CAMBRIDGE, MA 02139-4307
617-253-3229
FAX 617-252-1773

June 27, 2003

Cozen & O'Connor
2300 Bankone Center
1717 Main Street
Dallas, Texas 75201-7335

Attention:   Wes Vines

RE:   Valley Diagnostics

Dear Mr. Vines,

At your request, I have investigated the failure of an American Standard toilet valve, which failed at Valley Diagnostics causing extensive damage. My investigation has consisted of the following:

1. Inspection visually and with aided magnification of the failed valve.

2. Review of photographs of the valve as installed in the water closet after the failure.

3. Review of the scientific literature.

4. Review of chemical analysis of valve plastic as reported by Paul L. Carper of Verite Forensic Engineering.

Based upon this investigation, I have made the following observations and I have formed the following opinions within a reasonable degree of engineering certainty.

1. The incident valve is made of acetal plastic.

2. Acetal plastic is susceptible to degradation and environmentally assisted cracking in waters containing chlorine or other halogens at relatively low concentrations.

3. One manufacturer of acetal toilet valves indicates that chlorine concentrations greater than 30 ppm are harmful to the acetal plastic.

4. The Nalco Water Handbook notes that the Mississippi River at Vicksburg, MS contains more than 30-ppm chlorine.

5. The acetal plastic of the incident valve is severely degraded. It has changed from medium gray to white. The surface is rough and has the texture of a dried riverbed. There is an extensive crack, the fracture surfaces of which have turned white due to exposure.



Wes Vines
June 27, 2003
Page Two

6. *Chemical Resistance*, Volume 1, of the Plastics Design Library 1994, rates acetal as susceptible to cracking, oxidation of the plasticizer, softening, swelling and surface hardening when exposed to calcium hypochlorite.

7. Plastics have strength and toughness ratios which are 10 to 100 times lower than common metals, such as brass, used in plumbing fixtures. (See e.g. M.F. Ashby, *Materials Selection in Mechanical Design*.)

Based upon this investigation, it is my opinion that the toilet valve failed due to environmentally assisted cracking and deterioration of the plastic due to exposure to the warm, chlorine containing water in the water supplies of the Rio Grande Valley. Since these temperatures and salinity levels are normal and expected in a number of municipal water supplies throughout the United States, this toilet valve was defectively designed and is unreasonably dangerous for use in its intended application. There were no warnings attached or molded into the incident valve alerting the user of these foreseeable hazards.

These opinions are based upon the information available. If further information becomes available, such information will also be considered.

Sincerely yours,

Thomas W. Eagar

Thomas W. Eagar

jh