60

United States District Court
Southern District of Texas
FILED

NOV 2 8 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| TRANSCONTINENTAL INSURANCE COMPANY | § | |
| | § | CIVIL ACTION NO. B-02-205 |
| VS. | § | JUDGE ANDREW S. HANEN, |
| | § | (JURY) |
| AMERICAN STANDARD INC. | § | |

**AMERICAN STANDARD INC.'S RESPONSE**
**TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, American Standard Inc. (hereinafter "American Standard"), files this Response to Plaintiff's Motion for Partial Summary Judgment:

## I.

## BACKGROUND

Plaintiff Transcontinental Insurance Company has filed a Motion for Partial Summary Judgment arguing that there is no genuine issue of material fact on two issues and asks this court to, presumably, prevent Defendant from contending these issues.[1] For the reasons set forth below, Plaintiff's Motion is without merit.

## II.

## ARGUMENTS AND AUTHORITIES

Summary judgment is appropriate only when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Canova v. Shell Pipeline Co.*, 290 F.3d 753, 755 (5th Cir. 2002); *see also* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[1] In truth, it is not entirely clear what relief Plaintiff is requesting. Plaintiff argues that the "Court should hold that the safer alternative design issue is no longer in contention" and that the Court should "narrow the issues for trial" because "there is no dispute that acetal is unsuitable for plumbing applications." Plaintiff's Motion for Partial Summary Judgment at 2 and 3.





In determining whether there is a dispute as to any material fact, a court must consider all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Ramirez v. City of San Antonio*, 312 F.3d 178, 181 (5th Cir. 2002).

A motion for summary judgment can be supported by the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *See* FED. R. CIV. P. 56(c). The admissibility of summary judgment evidence is subject to the same standards and rules that govern the admissibility of evidence at trial. *See* FED. R. CIV. P. 56(e); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650, n. 3 (5th Cir. 1992); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175-76 (5th Cir. 1990).

**III.**

**PLAINTIFF HAS NO EVIDENCE**

Plaintiff has not produced any competent evidence in support of its Motion for Partial Summary Judgment. Instead, it refers only to briefs filed by Defendant on other matters. Unsworn or unverified pleadings and legal memoranda are not competent summary judgment evidence. *Compare Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (noting that unsupported statements in briefs and pleadings are not summary judgment evidence); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 ("legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion") *with Huckabay v. Moore*, 142 F.3d 233, 240, fn 6 (5th Cir. 1998) ("The facts put forth in a verified complaint may be treated as if in an affidavit on summary judgment, if the asserted facts meet the requirements of [Rule 56(e)]").

The Motion is improperly based entirely upon two "admissions" made by Defendant in legal memoranda on file with this court which Plaintiff claims constitute admissions precluding

Defendant from contesting the "admissions." They do not. These statements are not judicial admissions. Merely filing a brief with the court does not make a "judicial admission." *See Dartez v. Owens-Illinois, Inc.*, 910 F.2d 1291, 1294 (5th Cir. 1990) (noting that there is a difference between pre-trial memorandum and pleadings, and stating that "the fact that the post-trial briefs were filed in a trial court does not require that they be admitted as admissions"). Viewing the two statements in context establishes that they are not "formal concession[s] in the pleadings or stipulations" that would support a finding that they were admissions. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).[2] As such, Plaintiff has offered no evidence supporting its Motion, and in fact, has no basis for its Motion.

## IV.

## PLAINTIFF'S BURDEN

Transcontinental has asserted a products liability claim against Defendant based upon the allegedly defective design of a ballcock assembly. Specifically, Plaintiff alleges that the use of acetal for the ballcock assembly was a design defect. The parties stipulated that the plastic ballcock assembly functioned without failure for 18 years, ten of which occurred at Valley Diagnostic in Harlingen.[3] Plaintiff's design defect claim is governed by Texas Civil Practice and Remedies Code § 82.005[4] and Section 402A of the Restatement (Second) of Torts. *Flock v. Scripto-Tokai*, 319 F.3d 231, 236 (5th Cir. 2002); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex.1998); *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420,

---

[2] At most, the statements might be an evidentiary admission, a "statement of assertion or concession made for some independent purpose" that may be controverted or explained by the party who made it. *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).

[3] See Parties' Stipulations.

[4] TEX. CIV. PRAC. & REM. CODE § 82.005 applies to all claims that accrue after September 1, 1993. Because Plaintiff's cause of action for design defect did not accrue until after 1993, § 82.005 applies even though the assembly at issue was manufactured before the effective date of the statute. *See, e.g., Lattrell v. Chrysler Corp.*, 79 S.W.3d 141, 148 (Tex. App.—Texarkana 2002, pet. denied ) (noting that because the accident occurred after the effective date of § 82.005, the provision applied).






426 (Tex.1997). More precisely, Section 82.005 of the Texas Civil Practice & Remedy Code provides:

> (a) In a products liability action in which a claimant alleges a design defect, the burden is on the claimant to prove by a preponderance of the evidence that:
>
> (1) there was a safer alternative design; and
>
> (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery.
>
> (b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:
>
> (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and
>
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM. CODE § 82.005. The Restatement (Second) § 402A states:

> (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts § 402A (1965). The two provision must be read in conjunction as "section 82.005 does not attempt to state all the elements of a product liability action for design defect. It does not, for example, define design defect or negate the common law requirement that such a defect render the product unreasonably dangerous." *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999). A product is unreasonably dangerous if it is







manufactured in such a way that it presents to a user of such product a threat of injury such that: (1) a prudent manufacturer, who was aware of the risk of harm, would not have placed it in the channels of commerce in that condition, or (2) in such condition it would not meet the reasonable expectations of the ordinary consumer as to safety. *Burks v. Firestone Tire and Rubber Co.*, 633 F.2d 1152, 1156 (5th Cir. 1981).

Put simply, to prevail on its design defect theory, Plaintiff has the burden of proving:

(1) the ballcock assembly was defectively designed when sold;

(2) the ballcock assembly was unreasonably dangerous (weighing the risk and utility) to Plaintiff;

(3) the ballcock assembly reached Plaintiff without substantial change in the condition in which it was sold;

(4) the defective and unreasonably dangerous condition of the ballcock assembly caused physical harm to Plaintiff;

(5) there was a safer, feasible alternative design; and

(6) the defect was a producing cause of Plaintiff's injury.

*Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 306 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

V.

**FEASABILITY OF ALTERNATIVE DESIGN**

Without offering one single shred of evidence, Plaintiff asks this Court to determine the essential elements of its design claim are established in its favor,[5] by finding that "the safer alternative design issue is no longer in contention." Plaintiff's motion is more or less an *in limine* motion, asking this Court to prevent Defendant from producing any evidence, or any argument, regarding whether a safer alternative design was feasible at the time the product was manufactured (1983). Even more appalling is Plaintiff's assertion that it must produce no

evidence on this element of its cause of action. Plaintiff completely relies upon Defendant's "statement" that "American Standard does not controvert the feasibility of change or the feasibility of an alternative design." This statement does not "admit" the existence of a safer alternative design.

As Plaintiff notes, the statement at issue was made in Defendant's Brief in Support of Its Motion in Limine for Subsequent Design Changes, the purpose of which was to exclude from trial evidence of subsequent design changes which would be prejudicial to Defendant. Taken in context, Defendant acknowledges that it was (and is) possible to make a ballcock assembly out of other materials; however, the purpose of the statement was to clarify that American Standard does not contend that there were no feasible alternative designs – an argument that would support admission of subsequent remedial measures. *See* FED. R. EVID. 407. Defendant was also not "admitting" that any specific alternative was "feasible," as that term is used in design defect case law. Indeed, at no time has Plaintiff offered an alternative design in this case for this Defendant to analyze or test, or even consider, which is its burden. *See Dyer v. Danek Medical, Inc.*, 115 F.Supp.2d 732, 738 (N.D.Tex. 2000) ("Plaintiffs must offer evidence, at the summary judgment phase, of a safer design for the same specific purpose that would be equally effective and not unreasonably expensive."); *Amer. Tobacco Inc. v. Grinnell*, 951 S.W.2d 420, 437 (Tex. 1997) ("If the plaintiff does not set forth a safer alternative design in a negligent manufacturing claim, the claim fails as a matter of law."). Consequently, nothing exists for this Defendant to base such an admission on!

The burden is on Plaintiff to prove its case. Plaintiff must establish each and every element of its cause of action. Plaintiff is required to establish that there is a specific safer

[5] Another element of plaintiff's burden is to establish that the product was in the same or similar condition when the occurrence happened as when sold by ASI. No proof was offered on the point.







alternative design. TEX. CIV. PRAC. & REM. CODE § 82.005. To prove a safer alternative design existed, Plaintiff must establish that there existed a specific design that would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death <u>without</u> substantially impairing the product's utility. *Id.* Assuming that Defendant's statement could be construed as an admission[6] that a particular design was "feasible", *i.e.*, it was a reasonable design to the extent that it was not cost prohibitive or technologically impossible, the admission does not excuse Plaintiff from establishing the other elements necessary to show that the alternative was reasonable. As such, even assuming, without agreeing, that Defendant's statement could be construed as an "admission" that a particular design was technologically and/or economically feasible, it does not follow that that design is a safer alternative design as a matter of law, because not all elements of Plaintiff's claim have been established.

This Court is being asked to do something other Courts have said is not proper. Defendant's statement simply does not have the preclusive effect Plaintiff attempts to give it. Several courts have considered similar arguments and have determined that merely acknowledging that alternative designs were "feasible" does not establish <u>as a matter of law</u> that

alternative design does not establish that product at issue was dangerous). The burden is still on the Plaintiff to establish each and every element of its cause of action.

Defendant's statement plainly is not an admission that any specific alternative design is both technologically and economically feasible.[7] As such, it does not excuse Plaintiff of the burden of establishing that any specific proposed alternative design is both economically and technologically feasible and that it would substantially reduce the risk of injury to Plaintiff. In short, Defendant's statement does not take the safer alternative design issue out of contention, as Plaintiff argues.

**VI.**

**SUITABILITY OF ACETAL FOR PLUMBING**

Plaintiff next argues that Defendant's statement contained in its Motion to Exclude Dr. Eager's Testimony that DuPont concluded in the 1990's that the acetal product used here was not suitable for plumbing products somehow prevents Defendant from arguing that its use of acetal was reasonable. Yet, on the other hand, Plaintiff then concedes that "a key question, among other things, will be to decide what Defendant knew about acetal and when knew [sic] it." *See* Plaintiff's Motion for Partial Summary Judgment at 3. The statement at issue was made in Defendant's Motion Exclude the testimony of Plaintiff's expert witness. *See* Defendant's Motion to Exclude Dr. Eager's Testimony at 2. Mr. Eager opined in part that it was improper to use acetal products in the manufacture of the subject toilet and implied that removal of the product from the market was evidence of a defect. The statement at issue merely underscores this Defendant's position that such a conclusion is baseless and prejudicial, as at the time the toilet was manufactured, Defendant was not aware that there was any problems with the use of acetal in plumbing components.

The toilet at the center of this lawsuit was manufactured in 1983, long before DuPont, the manufacturer of the acetal used in the ballcock assembly, removed the product from the market. That occurred sometime in the 1990's. No evidence has been offered as to when "in the 1990s" the product was removed by DuPont from the market or why it was removed.[8] American Standard merely assumed the "worst case" position in its arguments to exclude such references as that is the purpose by which Transcontinental is intending to offer the information: for the proposition that acetal was not suitable for use in plumbing products. An "argument" is not an "admission." Whether this Defendant knew, or should have known about potential degradation problems in 1983 is the only question of relevance. What DuPont did in the 1990s, or why, simply is immaterial. The conduct of a non-party years after the manufacture of the subject toilet does not "admit" that American Standard knew at the time of manufacture that acetal was unsuitable for plumbing products.

## VII.

## CONCLUSION

American Standard requests that Transcontinental's Motion for Partial Summary Judgment be denied.

[7] At most, it is an admission that there could be a feasible alternative design.

[8] It should be noted that acetal ballcocks are sold in stores for use in toilets today. There is no "industry consensus" that acetal is not suitable for use in plumbing products.





Respectfully submitted,

**GERMER GERTZ, L.L.P.**
550 FANNIN, 7TH FLOOR
BEAUMONT, TEXAS 77701
(409) 654-6700 - TELEPHONE
(409) 835-2115 - FACSIMILE

By: James R. Old, Jr. w/ permission by Rett Holidy
**JAMES R. OLD, JR.**
STATE BAR NO. 15242500
FEDERAL ID NO. 10751

**ATTORNEY-IN-CHARGE FOR DEFENDANT, AMERICAN STANDARD INC.**

**OF COUNSEL:**
DALE M. "RETT" HOLIDY
STATE BAR NO. 00792937
FEDERAL ID NO. 21382
GERMER GERTZ, L.L.P.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument was served via Federal Express, postage pre-paid and properly addressed on counsel of record as listed below on this the 26th day of November 2003.

C. Wesley Vines
COZEN O'CONNOR
1717 Main Street, Suite 2300
Dallas, Texas 75201

James R. Old, Jr. w/ permission by Rett Holidy
**JAMES R. OLD, JR.**